Chief Judge Gregory, and may it please the Court, I'd like to suggest that the panel can resolve these cases, or certainly this one, on a narrower ground than deciding whether indirect uses of force satisfy the force clause. Specifically, the categorical approach in this case requires the Court to determine whether the elements of this underlying offense, which is unlawful wounding in this case, there's no divisibility issue, whether that can be satisfied by means which do not require the use of force, either direct or indirect. I'm certainly open and agree with my colleague's statements that Castleman did not specifically address the force clause. It addressed 922G9, however, I'm also aware, as the Court is, that there are a number of opinions following Torres-Miguel, which have specifically said that the poison example in Torres-Miguel has been substantially addressed by the discussion of force in Castleman. Irby, Reed, Burns-Johnson, Covington all say that indirect uses of force can satisfy the force clause. I'd like to set that aside for the moment because this statute that we're dealing with, 18.2-51 under the Virginia Code, is far broader than simply requiring the use of direct or indirect force. It says that an individual who causes any, under the case law, any bodily hurt whatsoever by any means with the requisite intent violates the statute. And that necessarily includes omissions. In the example that Chief Judge Gregory provided, for example, if someone fails to give medicine or fails to give food, and that causes any bodily hurt. That come under the, by any means? Absolutely. And there is state law that is very clear about what the elements in this offense mean. And so the obvious question I would imagine from the panel is why is, as was addressed previously, why is this case not addressed by Covington? The decision that was issued last week about the West Virginia statute. And I would say two things. First, the Covington opinion does not squarely address the question of whether West Virginia law, that wounding statute, encompasses omissions. And so they simply don't determine whether the elements of that offense can be satisfied by an omission, which is by definition not using force. Secondly, I would suggest that the Covington decision uses a methodology of applying the categorical approach, which is somewhat at odds with the strict elements test that was adopted by this court in its en banc decision in Apparicio Soro. In that case, the government made the exact same argument that the government made in the Covington case, which is that, hey, the defendant here hasn't identified a West Virginia case that shows that this offense can be committed without the use of force. But that's not the categorical approach. The categorical approach is strictly an elements test. I would suggest that there is a way to distinguish Covington from Apparicio Soro. The simple way is to say that Apparicio Soro, which said in that case that even though under the Maryland, let me back up. Were you in that case? I'm sorry? Were you in that Apparicio Soro case? No, that was the federal defender from Maryland. It was argued by a very good appellate lawyer there. And the holding by 12 members of this court, and there were two judges in dissent, Judge Wilkinson and Judge Niemeyer. But the holding from the majority of 12 members of this court was that the realistic probability language didn't require the defendant in that case to show that Maryland resisting arrest required the use of force because the law was clear about the elements of that offense. And Judge Davis was the author of that. That's correct. A majority opinion. But there we had a Maryland court, we had a Maryland decision that was on point, didn't we? You had a Maryland decision that said that the use of, that de minimis force was sufficient to establish force in a resisting arrest. And I would suggest we have an analogous circumstance here. That is the Long case, which we've identified, which says the by any means language in the statute imposes no limitation upon the means by which this statute can be accomplished. We know under Virginia law that you can be criminally responsible for injury without the use of force through omission. And we've cited two cases where the court stated clearly, which is standard law everywhere, that an individual who has a duty to provide care and fails to do so, and if that causes death, they can be prosecuted for intentional murder. And I would suggest that it's very clear that if, for example, a young mother or an older mother fails to provide, or a father fails to provide food or medicine to an infant, and instead of death, the consequence is any bodily hurt whatsoever. That individual, if they have the requisite intent, have violated this statute, the unlawful bodily injury statute. And there is no real response from the other side other than that the vast majority of the prosecutions under this statute don't involve omission. And I can agree with that, but that doesn't address the categorical approach. That is that this court is required to determine whether these elements encompass the requirement that the government prove the defendant used force. And responding, Chief Judge Gregory, to your point about the categorical approach generally and how we're trying to bit a round hole into a square peg. Essentially, the categorical approach is designed to be simple. It's designed not to require surveys of state law. In Covington, the government attached an appendix of some 75 West Virginia cases. In Aparicio, Soro, they attached an appendix of 35 or something, dozens and dozens of Maryland resisting arrest cases. That's not what the categorical approach is about. It's about the panel simply looking at the elements of the offense, looking at the state law, discerning those offenses, and deciding whether those elements require the use of force. If I can talk briefly about Duane A. Alvarez, which is the Supreme Court case where that realistic probability language comes from. So just on the omission, are we still on the omissions argument? We can talk about that if that's what you're asking. Did you raise that below and I don't even see it in your opening brief? We did. Well, let me say this. It is discussed at length in our reply brief. And what I'd say about that is that typically new arguments or new issues are not supposed to be raised in a reply brief. They weren't raised below. Did you argue this to the district court? What we argued in the district court was that this statute is incredibly broad and can be committed through any means. And we argued that in the opening brief here. And the government says, no. Actually, this offense has to be committed through the use of force. And the rule certainly allows us to respond to that and say, actually, no, this offense can be committed through omission. And so I think it's 13 through 15 of the reply brief. We identify Virginia courts which have applied omission in the context of murder. We discuss Long, which is the Virginia Court of Appeals case, which says there's no limitation upon the means by which this offense can be committed. Is Long your best case for that? Long is the best case because it says explicitly there is no limitation upon the means by which this offense can be committed. The issue of omission is raised at length in our reply brief. It's raised in a brief aside about means in the previous case, in the opening brief and in the reply. It's raised in other cases that are pending, that have been stayed pending this court's review of these cases. So omission is before the court. And it is simply a response to the government's argument that you can't commit this offense without the use of force. And we say, actually, you can. Here is a way that you can commit this offense without any use of force at all. Perhaps the court would consider, well, isn't omission simply another variety or species of indirect force? I would say no. And I have a case that is prior precedent, United States v. Gomez, which is cited in the reply brief involving a Maryland child neglect statute where this court specifically said, hey, if an individual is responsible under Maryland's child neglect statute for failing to provide care, that's not the use of force, even if it causes serious injury. I'd also point to two other persuasive sources which say that omission simply is not the use of force. First is actually in the Castleman concurrence by Justice Scalia. Justice Scalia was not happy that the majority in Castleman looked to social science definitions of what domestic violence was. He says all of these, and he pointed to the source in the majority of this brief that was submitted that talked about the way that people talk about domestic violence. And he said they include such a wide range of nonviolent and even nonphysical conduct that they cannot possibly be relevant to the meaning of a statute requiring physical force or to the legal meaning of domestic violence. For example, Amici's definitions describe domestic violence acts that humiliate, isolate, frighten, and blame someone, acts of omission, excessive monitoring. So clearly Justice Scalia didn't think omission constituted the use of force. There's also an opinion which by Judge Niemeyer in dissent, which we've also cited in the reply in Bajorano Urrutia versus Gonzalez. And he said that an omission, on the other hand, seldom, if ever, will involve physical force since by definition an omission is a failure to act. We know under Virginia state law that an individual can be criminally responsible for causing injury, even serious injury or death, through omission if they have a duty to act. And because this statute is so incredibly broad, then we know also it can be accomplished without the use of force. Covington didn't address that point. So what do we do with Covington and Reed and Irby and Salmon? You familiar with that one? Yep. Well, what do we do with them? I don't think, I would suggest that the court not do anything with them. I'm not suggesting, I think the narrowest ground here is that Irby and Reed and Burns-Johnson, which talk about indirect uses of force satisfying the force clause, may be absolutely correct. But that's, they're not dispositive of this case because our argument doesn't depend upon saying that it can only be accomplished by indirect uses of force which don't satisfy the force clause. This statute is even broader than that. And so I would suggest that when you get a case where the argument solely depends upon indirect uses of force, then the court can evaluate, okay, do we need to address the conflict between Torres-Miguel, which says that indirect uses of force don't constitute force, and Irby and Reed and Burns-Johnson and how they read Castleman, and that can go en banc and you can decide that issue. We don't need to decide that here because this statute is so incredibly broad. I do think... You're saying something should go en banc and we need to straighten something out? Not this case. Not this case. I understand there's not this, but you're saying there is a, that there's a conflict, irreconcilable conflict between some of these later decisions. I am sympathetic to the view that Castleman doesn't apply to the force clause that's at issue here. I think that Irby and Reed and Burns-Johnson look at the rationale in the majority opinion in this case was, hey, this underlying offense doesn't even constitute domestic misdemeanor, domestic violence, even if you apply the common law definition because it's not force, and they provided the poison example. And the majority says, well, that's not true, actually. If you engage in some de minimis, or not de minimis, but indirect force, such as you pull a trigger and that causes the use of force, which causes the injury, then that's force. You can't distinguish between direct and indirect uses of force. So that's the rationale that is cited in Irby and Reed and Burns-Johnson. And, you know, I think that the court can certainly try to deal with that in another case, but I would suggest that here we don't need to deal with it. The last thing I would say, again, is that there is a clear difference that is difficult for lower judges and for parties to deal with, and that is with the methodology of applying the categorical approach. Because in cases like Salmon and Dr., Chief Judge Gregory, and in some other cases, there is these references to realistic probability. And the Duane S. Alvarez test... Well, what do you say we ought to do about that? What I would suggest is that the way that this court should distinguish Covington and those cases that apply that realistic probability methodology is the same way the en banc court distinguished Duane S. Alvarez in Aparicio Surio. That was that when the elements, the law defining the elements of the state law is clear, the defense doesn't need to come up with a case to show that the prosecutors have used the statute to apply to conduct outside of the course of... You look at the statute and go on. Look at the statute and state law and go on. That's all you need. If the state law... But they're talking about realistic probability as opposed to a theoretical possibility. Right. That language from Duane S. Alvarez was not a force clause case. And there is also binding precedent, I would suggest, Torres-Miguel, which says, hey, that realistic probability language, that was limited to the comparison of a listed crime to when an individual has a state offense that may fall under the federal definition of a generic offense. That's what Duane S. Alvarez is about. And it doesn't apply to force clause cases. That's what Torres-Miguel says at the very end. One way to distinguish Duane S. Alvarez and the realistic probability is that the first panel to ever address this realistic probability test said that it doesn't apply to force clause. And that's... Which one is that? That's Torres-Miguel. And so the last two paragraphs of Torres-Miguel say, we're rejecting the government's Duane S. Alvarez realistic probability case because that language is limited to the comparison of state offenses to listed crimes. There is, I think, a narrower way to distinguish it. And that is the way that the en banc court did in Aparicio Surio, which is, hey, these elements are clear. We know they're clear. And in this case, because they're clear, we can determine that the statute is broader than the force clause. In Duane S. Alvarez itself, the issue was about whether California's aiding and abetting was broader than the generic offense, the generic theft offense, and whether it was different, whether California was special. The alien in Duane S. Alvarez said that California aiding and abetting, unlike that of most other states, makes the defendant criminally liable for conduct that the defendant did not intend, not even as a known or almost certain byproduct of the defendant's intentional acts. And they cited three California cases. Well, the Supreme Court, in comparing California law to the listed offense, went through those cases and said, they don't establish that principle. And then Justice Breyer for the court said, look, you can't just come up with some hypothetical circumstance. You've got to point to state law. In Torres-Miguel, this court said, that all relates to listed offenses. But I would also suggest a way to distinguish it is that it relates to circumstances where the elements of the state law are not clear. If the elements are not clear and the defendant says, hey, this is outside the listed offense or the force clause, you have to come up with some state law. But here, the law is absolutely clear. This offense can be committed through omission, it says, by any means. And because of that, it is broader than the force clause. What about the government's alternative argument that this is enumerated because it's a generic aggravated assault? Do you want to address that? So it's very clear that the generic offense, and I'm citing to the sites that we provided in our brief, to the model penal code and to Black's law and to Lefebvre's treatise and to the other cases that have determined what is the generic offense of aggravated assault. They generally require either serious bodily injury or an extreme indifference to human life or the use of a deadly weapon. There is an offense under Virginia law that fits that definition. It's the next one over, 18.2-51.2, aggravated malicious wounding. That one requires significant physical impairment and severe injury. If I can just finish up, I would say that's a statute that matches aggravated malicious aggravated assault. This one doesn't require serious injury, doesn't require extreme indifference to human life, doesn't require use of a deadly weapon. But it does require the intent to maim or cause, I mean, it's... Absolutely. And if that was the sole criterion for the generic offense of aggravated assault, I would agree, it fits. But that's not what the courts have said aggravated assault requires. Serious bodily injury, extreme indifference to human life, use of a deadly weapon. And not intent to cause serious bodily injury, you don't think? Well, I don't think that's sufficient. I think you can really, really want to kill someone, but if you don't cause serious bodily injury or use a deadly weapon or have extreme indifference to human life, you haven't satisfied what we consider to be the key elements of the generic offense of aggravated assault. And so that's basically all the cases we've cited. I think it's 17 and 18 in our reply brief. I thought that the Model Penal Code and Blacks did one of the aggravators that they cite to is the intent to cause serious bodily injury. Am I wrong about that? What they say is that if you've attempted to kill someone with extreme indifference to human life, that that could satisfy aggravated assault. And here, I would suggest the intent, although it's bad, it doesn't require an individual to have extreme indifference to human life, just the intent is lower. It is not necessarily the intent to kill. And so there's actually Virginia case law where people say, hey, this is a lesser included of murder. And the Virginia court has said, no, you don't have to have the intent to kill to satisfy this offense. I would suggest that the aggravated assault with the intent to cause serious bodily injury and you cause it and you have extreme indifference to human life, that is far closer to the intent that is required in a murder case. Thank you. All right. Thank you, counsel. Mr. Carrizale. Good morning, Your Honors. May it please the Court. Christopher Carrizale for the United States. A defendant cannot violate the Virginia maiming statute unless he has the intent to maim, disfigure, disable, or kill. The presence of that intent requirement guarantees as a textual matter that a defendant cannot be convicted of violating the statute unless he has used, threatened to use, or attempted  That is the central holding of Reed, the central holding of Covington, the central holding of Irby. And that decides the case given that the statute at issue in Reed had the same intent to cause bodily injury as is present here and given that the statute at issue in Covington is essentially identical to the statute at issue here. Even if the text didn't compel this conclusion, Virginia case law does. Now, the Virginia maiming statute has been on the books since at least 1887. It probably goes back to before the founding and to English common law. And yet, Mr. Kamens has not identified a single case that suggests that this statute can be violated by mere touching, by what Johnson said is the second category of force. Not a single case. You agree that it's a categorical approach? Yes. In this case, I would say that we're conceding that for purposes of this appeal, we're happy to take on the whole statute. So we'll take the categorical approach rather than the modified categorical approach. If the question is whether the statute is divisible, I believe the answer to that is yes. You say it's divisible into four offenses. And the primary Have you given that up yet? No. I don't think it matters in this case. So we're not You say that in your brief. I just thought maybe you'd change your mind with No. And in fact, the basis of cases that have come out since then. The basis for that is the Virginia Supreme Court case in Harris from 1928, I believe, in which the indictment charged wounding and the court reversed the conviction and said, no, you needed to charge bodily injury. Under Discamps, under Mathis, that shows that the Virginia Supreme Court has construed this as being malicious wounding, unlawful wounding, malicious bodily injury, unlawful bodily injury, four separate offenses. But for the purposes of this case, we're willing to take the whole statute on as a categorical matter because we think it clearly qualifies. Now, not only does Mr. James fail to cite any case that suggests that this statute, which requires an intent to kill, maim, disable or disfigure, not only does he cite any case suggesting that that can be violated by simple offensive touching, but the Virginia cases actually make clear that this is a serious statute. The Virginia case Johnson, which we cite in our brief from 2008, shows that, says that the statute requires an intent to permanently harm another person. The same case, Johnson, citing prior Virginia Supreme Court cases, says that even a punch, an unprovoked punch to the face with a closed fist, normally is not enough for the court to presume that a defendant has the intent to cause, to maim, to kill, to disable, to disfigure. In that case in Johnson, the Virginia Court of Appeals, actually, there was a dissent. The defendant in that case, after he was sentenced in the case, turned around, punched the prosecutor, caused a concussion, caused the prosecutor to fall to the ground, hit his head and then require stitches. There was four pages of debate about whether or not there was sufficient evidence in that case to satisfy the statute. And there was a dissent, in which case the dissenting judge said, no, I cannot presume that there's intent based on an unprovoked punch on an unsuspecting victim. So if there's, Judge Gregory, to get to your point about the worries about these predicate offenses and whether states have the incentive to narrow them, the Virginia cases make clear that they carefully police this statute. And not only Johnson, but, by the way, in that Johnson case, they said that the only reason that they said that the punch itself was enough was because it was a punch of unmitigated brutality. And the dissent said that he didn't think that the punch alone had enough unusual violence or brutality. So this is not a squeeze. This is not a pinch. These are serious offenses, as they must be if a defendant is going to act with intent to kill, maim, disfigure, or disable. There are numerous cases cited in our brief in which the Supreme Court or the Court of Appeals has reversed malicious wounding convictions and sent the case back and said, you can have an assault and battery here, but there's not enough intent to find that there was a wounding or a bodily injury here. This is a serious statute. Mr. Kamen's even pointed out that this is often a lesser-included offense of murder. In fact, this is basically attempted murder with bodily injury. On that point, before I move on to some of the omissions arguments, Judge Gregory, on your other point about whether or not we have recidivists here, and I recognize in your opinion in Dr. and Judge Wilkinson's concurrence in Dr., that was a topic that you both discussed about some frustrations about mandatory minimum sentences. Mr. James is 24 years old, already has a criminal history level of 6. As this Court held in Eldridge opinion, which was from 1991, affirming without discussion that Virginia unlawful wounding qualifies as a crime of violence, he is exactly the type of recidivist defendant who the law should and must seek to incapacitate. I want to go now to Mr. Kamen's arguments about omission. And the simple response to omission is that this Court has already decided and rejected that argument in Irby. It was presented squarely in Irby. I looked at the briefs last night, and the defendants in that case argued the same withholding of medicine, that improbable hypothetical. And if you withheld medicine, surely that would not be enough force to commit murder. And the Court in Irby said, no, murder committed by omission obviously is murder. And the language that the Court used in Irby is, it is enough that the individual intentionally acted to place the victim in the path of an inevitable force. That's Irby, and that's consistent with Castleman. In Castleman, the Supreme Court said that the use of force is the knowing or intentional causation of bodily injury, knowing or intentional causation of bodily injury. Of course, in the proper circumstances – Is that – are you referring to the concurrence or the majority opinion? That is the majority opinion, the slip op at page 13. Pardon? That's the slip opinion at page 13. Now – and in the right circumstances, of course an omission can – you can kill by omission. Of course. That's what the Court held in Irby. Now Mr. Kamens criticizes us for not pointing out or says, well, I don't have to raise a Virginia malicious wounding offense where omission has – or the Court has found that wounding occurred by omission. And in fact, he concedes not a single Virginia case holding that wounding by omission can satisfy the statute, can satisfy that high intent requirement of intent to kill, maim, disfigure, disable. And there's good reason for that, too. As Judge Niemeyer pointed out in his concurrence – and I want to get to that in a moment in Barahano, I believe the case was. What case? It is called Barahano-Urtria, said an omission seldom, if ever, will involve physical force. But of course, an omission can involve physical force in those rare cases when someone kills by omission. Now, Mr. Kamens said that he cited cases from Virginia where someone was found liable for murder for omission, but that – those cases were not defendants who were found liable for murder. They're found liable for involuntary manslaughter. And that is generally not the use of force because that can be by neglect. That can be by a lack of intent, which, as the court in Leocal held, as this court in Torres Miguel held, and as is still good law from Torres Miguel, you can have bodily injury or even death resulting without the use of force if it is not volitional force. That's still good law from Torres Miguel, and that's consistent with the Supreme Court's unanimous opinion from Leocal. The cases that he cites from Virginia is a case called Davis from 1985. In that case, a defendant allowed her mother to freeze to death and starve to death. The mother was found – the elderly mother who was incapacitated was found with a body temperature of 80 degrees. Now, one would think that might be enough to satisfy the intentional killing. No. She was convicted of involuntary manslaughter. In Biddle, that's another case that Mr. Kamen cites, a mother allowed her three-month-old child to starve to death. And the Court of Appeals – the Supreme Court – Virginia Supreme Court in that case reversed the murder conviction and found that there was not intentional conduct on behalf of the mother to willfully or maliciously withhold food and liquids from the baby. These are horrific cases and horrific details, but that does not negate the fact that in limited circumstances, an omission can cause murder, as the Court held in Irby. And in some hypothetical – I've not – I've yet to hear it. Mr. Kamen hasn't proposed one. An omission can cause – omission with intent to kill, maim, disable, or disfigure can satisfy the maiming statute. One hypothetical – I'm sorry. I just – I lost the thread for a second. My fault. So you were saying an omission could satisfy the Virginia unlawful wounding statute. Yes. Short – yes. I'm not arguing that it's just not covered by the statute. No. Because an omission can cause murder. And to give an example, I think of – And just – okay. So how is an omission a use of force? As Judge Roever said in Jennings, I want to – there's a – Where? Jennings. Jennings. I'll give the site to the Court. The Seventh Circuit opinion. Oh, I just lost it. Seventh Circuit. Seventh Circuit, Judge Roever. I'm having a lot of trouble with the Fourth Circuit. Well, she was – she directly addressed this – this argument. And this is at 860 F. 3rd, 450. The pin site is 459 to 460. And she writes, if a defendant has the ability to withhold life-sustaining food or medication,      I'm arguing that. I'm arguing that. I'm arguing that. I'm arguing that. I'm arguing that. I'm arguing that. There's a death penalty under the Corp of Hands act under a certain circumstance like age, infirmity or captivity. So the defendant's control is the force.  So the defendant's control is the force. castleman, Erbe, Reid all held that poison is an indirect use of force but nonetheless is a use of force. So to offer my own improbable hypothetical. Imagine a incapacitated victim in his hospital bed and he's got life-saving medication and if you give too much of that life-saving medication, he dies. You poison him to death. If you give too little or if you turn it off, he dies because you need the medication. Under castleman, under Erbe, no one debates now that if you were to turn that knob up and poison him, that is an indirect use of force and would qualify under castleman. The only way that Mr. Kamens can succeed here is if he can convince you that just turning the knob down by withholding. But you didn't turn the knob in that example. I mean, I don't mean to be all literal about it but we are construing words and at least it's matter on matter. You're turning the knob down. I'm worried about the case where you literally do nothing. You just stand there. Well, I would go back to Erbe then in which you intentionally placed the victim in the place of an impending cause that you knew was going to cause death. So going back to the old movies where someone is tied up on a railroad track. Penelope. I'm sorry? Penelope. It's always Penelope. Exactly. Rocky and Bullwinkle. You're intentionally placing that victim in the way of the impending train just like you're intentionally placing them. But you tie them to the railroad tracks. I mean, that's the force, right? Or are you talking about just like a bystander who walks by and doesn't untie Penelope? Or perhaps you lead someone who can't see onto railroad tracks and just coax them on and then they're hit by the train. The force is the train and it's the intentional act. That's what Leocal makes clear. That's what Judge Rovner's point is that it's not necessarily we're getting lost in the idea  But the force is the intentional act by the person to cause death. A harm to befall the victim. And whether that's direct, whether that's indirect, whether that's removing a barrier such as life-saving medication that otherwise would cause that train barreling down the tracks of the disease or whatever it is that's going to be the force that causes the injury. So your argument, and I totally get this, is look, direct-indirect is basically this is all one question, direct-indirect, omission-commission. Once you've said direct-indirect doesn't matter, so too commission-omission. That is the argument. That all makes sense. I totally understand that. It's just that there is this kind of literal sense in which we can understand direct-indirect as being different because at least it involves you had to pull the trigger, you had to do the eyedropper to get the poison into the person's mouth. Whereas commission-omission would open at least this set of hypothetical cases where there is, I mean unless you're going to, there's just literally no force in this picture. Well, I think that it's a combination of the intentional act by the defendant and the fact that these are always going to be instances in which the defendant has control over a vulnerable victim, whether it's a child, whether it's someone who's infirm, whether it's someone who's misled. The defendant is exercising to basically place that person in the way of a force that the defendant knows is coming. And as an intellectual matter, consistent with Leocal and Johnson, that is the intentional act. As Judge Gregory said, that is the violence. That is violent just as much as a very slight use of force into a jugular, into the jugular vein is. And that's why I believe Castleman resolves this, Irby resolves this by the fact that it was presented to Irby and by the fact that Irby's language. And it can't make sense. Right. As a matter of common sense, I fully understand what you're saying, but there is this textual problem with the word force, that's all. I would submit to go back to the intentional action and the fact that this is only going to be instances in which the defendant has control over a victim. There's, to usher him or her into the impending force, that is force, if the court needs that textual basis. I want to make sure I respond to all of Mr. Kamen's points. To get quickly to the language of the Virginia statute, he said. What do you deal with Aparicio Soraya in bank case? It doesn't help them here. Aparicio Soraya, it does not help Mr. James here. It doesn't help Mr. James. No. Aparicio Soraya dealt with assault and battery. And in that case, the court held that you could, the statute at issue could be committed by offensive touching. And the court, the court said yes, we've not found any. Do you agree that these, if Irby and Reed and Covington, which you say, they're the three cases you said you're primarily relying on, to the extent they're inconsistent with Aparicio Soraya, they're not valid? I don't think they are. And you, Judge, I don't think they're inconsistent. I do not believe they're inconsistent. If they are inconsistent, can they alter Aparicio Soraya? No, but Aparicio Soraya, They have to be consistent with Aparicio Soraya. Have to be consistent. But that, as you pointed out, that dealt with a different statute, and you were spot on. The language in that court, this is from 740 F. 3rd, page 157. The court there said, Judge Davis, merely mundane legal research skills could locate that Maryland's highest court has stated that the degree of force required as an element of Maryland resisting arrest is offensive physical contact. There is, the greatest research skills in the world, we've now heard two oral arguments on the exact same statute, has not located a single case suggesting that the Virginia maiming statute can be violated by offensive physical contact. Doesn't exist. It cannot be violated by offensive physical contact because it requires intent to kill, maim, disable, or disfigure. So Aparicio Soraya is just not relevant here because there, there was a controlling Maryland Supreme Court case that straightforwardly answered the question. And the unlawful wounding and the malicious wounding both require the same intent. Yes. They both require the same intent to kill. You say these statutes are the same as the West Virginia statute in Covington? Substantially the same. Substantially. But did the West Virginia statute, did they just pick it up from the, from the mother state? They would. I think they come back all the way from the mother. You were talking about the, well I know, but when West Virginia was carved out of Virginia, did they bring this statute with them? I, I unfortunately don't know. I know they both came from common law. You had it back to the common law there at one time. Farthest I've been able to trace it back so far is the exact statute. You had it back in England, didn't you? That's right. Right. I'm just trying to get you to see if it came from Virginia. Before they split, I suspect. Right. Before they split. Yes. Before West Virginia was created, when they were created, did they get this statute from the Virginia Code? I don't know. I don't know, but I presume so. That's all right. Very quickly, Torres Miguel and Burns Johnson on the question of, looking for realistic possibilities rather than, realistic probabilities rather than possibilities. Burns Johnson said in light of the Supreme Court's holding in Moncrief v. Holder in 2013, this is footnote two of Burns Johnson, that the court could apply the realistic probability standard across all cases,  What about Aparejo's Raya? Did we reject that in Aparejo's Raya? I don't believe that was at issue in Aparejo's Raya. I see my time is up, but I'd also, very quickly, Judge Harris, just note that it's merely intent to cause serious bodily injury and that's satisfied here. Thank you, Your Honor. I ask that you affirm. Thank you, counsel. Mr. Kamins. Moncrief wasn't a forced clause case. It was a listed offense case issued in 2013 before Aparejo's Raya. I have two points. First, my friend, Mr. Catazon, has conceded that this statute encompasses omission, as he must. And so the only question for this panel, and I simply don't know whether West Virginia, the West Virginia offense covers omissions, but the only question here, given that concession, is whether omissions constitute the use of violent physical force. The answer is clear, and it's not addressed by Irby. I will, for purposes of this argument, concede that leading an individual onto train tracks where an oncoming train is about to hit the person is no different from pulling a gun out and shooting that person. Both of those instances or hypotheticals involve a defendant who engages in conduct where he sets concrete bodies in motion. And that definition comes from Johnson, 2010, where Justice Scalia for the Court says, this requires physical force. And we have definitions of physical force that come from physics which require the use of the exercise of concrete bodies in motion. That doesn't help us that much in that case. In Castleman, the Court says, what this means is that force is not emotional force. It is physical force. It means setting bodies in motion. Omission does not do that by definition. And Irby doesn't change that. Irby addresses indirect uses of force like taking someone onto train tracks or pulling a chair out of somebody which can then cause injury. Those are indirect uses of force that still require proof that the defendant set concrete bodies in motion. Omission does not require that. A parent who decides not to feed or provide medicine for a child because they simply don't want that child to live or they want the child to suffer some grievous injury, and the child therefore suffers some bodily injury or any bodily hurt whatsoever by means of omission, that constitutes a violation of this statute. The person didn't lead the child onto train tracks. The person didn't cause the injury through the exercise of concrete bodies. What the person has done is engaged in neglect and they are therefore criminally liable. And even if Irby addressed this question, the Court would be bound by United States v. Gomez, which preceded Irby, in which the Court was, as I said, addressing the Maryland child neglect statute and said, pursuant to the statute, a defendant may be found guilty of physical child abuse by committing an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force against a child. And so that establishes the principle that we ask the Court to adhere to here. We've identified Virginia law that says this offense can be committed by any means and the government has conceded omission is a means. That resolves the case. All right. Thank you, counsel.
judges: Roger L. Gregory, Robert B. King, Pamela A. Harris